UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CARMEN VARGAS,<br><br>         Plaintiff,<br><br>   v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[1]<br><br>         Defendant. | Case No. 1:22-cv-01052-BAM<br><br>**ORDER REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Docs. 20, 24, 25) |

**INTRODUCTION**

Plaintiff Jose Carmen Vargas ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act. The parties' briefing on the motion was submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2] (Docs. 20, 24, 25.) Having considered the parties' briefs,

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this suit.

[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Docs. 8, 9, 13, 15.)

1

along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record and is based upon proper legal standards.  Accordingly, this Court will deny Plaintiff's motion for summary judgment and affirm the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

In November 2007, Plaintiff applied for Title XVI Supplemental Security Income and Title II Disability Insurance Benefits, which were denied upon consideration on February 27, 2008.  AR 76-77, 87.  These became the Commissioner's final decision as Plaintiff did not proceed with that application.  *Id.*  In January 2010, Plaintiff applied again for Title XVI Supplemental Security Income and Title II Disability Insurance Benefits, which were denied initially on June 9, 2010 and upon reconsideration on October 6, 2010, and again became the Commissioner's final decision when Plaintiff did not further proceed with the second application.  AR 81-82, 87.

In the present matter, Plaintiff applied for Title XVI Supplemental Security Income on December 24, 2019.  AR 363-72. [3]  Plaintiff also applied for Title II Disability Insurance on January 10, 2020.  AR 373-76.  In these applications, Plaintiff alleged that he became disabled on February 1, 2007.  AR 363-76.  He alleged that he was disabled due to diabetes and pain and movement limitations due to a right buttock implant.  AR 371.  Plaintiff's application was denied initially on June 1, 2020, and on reconsideration on August 20, 2020.  AR 86-06; 166-71.  Plaintiff requested a hearing before an administrative law judge ("ALJ") and ALJ Bonnie Hannan held an initial hearing on March 15, 2021, at which Plaintiff did not appear.  AR 51-54.  ALJ Hannan subsequently held a hearing on August 2, 2021.  AR 55-75.  ALJ Hannan issued an order denying benefits on the basis that Plaintiff was not disabled on August 5, 2021.  AR 24-50.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied.  AR 1-8.  This appeal followed.

///

///

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

**August 2, 2021 Hearing Testimony**

ALJ Bonnie Hannan held a telephonic hearing on August 2, 2021. AR 55-75. Plaintiff appeared and was represented by his attorney, Amanda Foss. Susanna Roche, an impartial vocational expert, also appeared and testified. AR 69-74. The ALJ began by admitting Exhibits 1A through 34F into evidence. AR 61.

Upon examination by the ALJ, Plaintiff testified that he lived with his brother and that his brother helped him financially. AR 62. Plaintiff testified that stayed home during the day and his brother worked. *Id.* Plaintiff said that he could take care of his own personal needs such as getting himself to the restroom or making himself something to eat. *Id.* Plaintiff stated that he did not drive "much" and last drove "about a month" prior to the hearing to get his medicine. AR 63. Plaintiff said that he completed sixth grade in elementary school, was educated in Mexico, and could read and write in Spanish but not in English. *Id.* He stated that he had not taken any English as a second language classes. He could not fill out a grocery list in English but could do so in Spanish. *Id.*

Plaintiff stated that the last work he did was in 2007 in a construction labor role for R&L Brosamer in California. AR 64. Plaintiff said that the heaviest thing he had to lift and carry in that job was 50 to 60 pounds. *Id.* He stated that he had not worked since then because he could not work. *Id.* In response to the ALJ's question regarding income in 2013 from El Patron Farm Labor, Plaintiff said that he did not know what that income was from. *Id.*

Plaintiff testified that he could not work because he had an implant in his buttocks and had a lot of knee pain. *Id.* He said that if he stood too long or sat too long, it began to hurt. *Id.* Plaintiff testified that the implant helped "very little" with the pain. *Id.* Plaintiff said that he could get dressed on his own, bathe on his own, would move to sit in the backyard every day, did not do grocery shopping, would wash the plates and spoons that he used. AR 64-65. Plaintiff said that he could reach for things in front of him but "almost cannot" reach for things overhead. AR 65. He stated that both arms were problematic. AR 66. Plaintiff said that his daily routine involved sitting for a bit, then walking or laying down when his knee and buttocks began hurting. *Id.* He stated that he could stand for about ten minutes then would sit down for another ten minutes or walk for ten minutes, and then would lie down for 15 to 20 minutes. *Id.*

During questioning from his attorney, Plaintiff stated that he spends "almost half of the day" laying down during the day. *Id.* Plaintiff testified that he alternated between laying down and sitting to get comfortable. AR 66-67. Plaintiff stated that he did not suffer from polyneuropathy or experience numbness and tingling in his feet and did not experience swelling in his feet. AR 67. Plaintiff further said that did not need to elevate his legs during the day and had not had issues with falling. *Id.* Plaintiff testified that he could lift a maximum of ten pounds once a day. *Id.* Plaintiff said that he did not have side effects from his medication. AR 67-68. He testified that the pain he experienced made it difficult to focus and concentrate, and that he had difficulty physically and mentally with working. AR 68. Plaintiff testified that he did not go out to dinner or out to movies before COVID because he knew very few people and did not live around where he grew up. *Id.* Plaintiff testified that he has eyesight issues because of his diabetes and wears glasses to help with that. *Id.* The ALJ then asked if there was an allegation of mental health impairment, and Plaintiff's attorney said that she saw a potential diagnosis of depression from a primary care physician but did not see if Plaintiff was taking any related medication. AR 69. Plaintiff stated that he was not taking any medication for a mental health condition and had not had any mental health hospitalizations. *Id.*

Following Plaintiff's testimony, the ALJ elicited testimony from vocational expert ("VE") Susanna Roche. AR 69-74. The VE testified that the resume correctly described her professional qualifications; could give an impartial and neutral opinion; had not discussed her testimony with the ALJ or Plaintiff prior to the hearing, had read and listened to Plaintiff's testimony regarding his work history; was familiar with the Social Security Administration's definitions of unskilled, semiskilled, skilled, sedentary, light, medium, heavy, and very heavy work; and would note if any opinions conflicted with the information in the Dictionary of Occupational Titles and the basis for the opinion. AR 70. The VE classified Plaintiff's past work as Construction Worker II (DOT No. 869.687.026, very heavy, skill level 2, unskilled) which was heavy work as performed. AR 71.

The ALJ then asked the VE hypothetical questions regarding a hypothetical individual with Plaintiff's age, education, and past job described. For the first hypothetical, the ALJ asked the VE to consider a hypothetical person who was limited to: light work; occasional bilateral operation of foot controls; occasional reaching overhead to the right; occasional climbing of ramps and stairs; never

4

climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling, with balance as defined in the Selected Characteristics of Occupations in the DOT; never working at unprotected heights or with moving mechanical parts; never working in extreme cold or extreme heat; and occasional vibration. *Id.* The VE testified that the hypothetical individual could not return to the past job as actually or generally performed, but could perform other work including: Marker (DOT No. 209.587-034, light, skill level 2, unskilled, with 129,300 jobs nationally); Raw Shellfish Preparer (DOT No. 311.674-014, light, skill level 2, unskilled, with 21,100 jobs nationally); Housekeeping Cleaner (DOT No. 323.687-014, light, skill level 2, unskilled, with 220,000 jobs nationally). AR 71-72. The VE further testified that employers would tolerate no more than ten percent of time off-task and no more than one absence every two to three months. AR 72. The VE testified that her testimony was consistent with the Dictionary of Occupational Titles, but the Dictionary did not address issues of limitations based on right/left or upper/lower extremities, reaching overhead, or off-task time and absenteeism. AR 72-73. For those items, the VE testified that her opinion was based upon her professional knowledge, training, and experience. *Id*. The VE further testified that there were not any apparent or other conflicts between the Dictionary of Occupational Title's requirements and the hypothetical's limitations. AR 73.

Upon examination by Plaintiff's attorney, the VE testified that the Raw Shellfish Preparer and Housekeeping Cleaner jobs could be learned by demonstration and the Marker job could be learned by demonstration depending on the language of the store the individual was employed in, i.e., it would be difficult but possible if the store was primarily in the English language and would be more easily accomplished if the store was in the Spanish language. AR 73-74. The VE also testified that the jobs would not be available if the individual needed a sit/stand option and that there would not be other jobs at the light level in a large quantity with the limitations of the first hypothetical and a sit/stand option. AR 74.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

///

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 24-50. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity from since the alleged onset date of February 1, 2007. AR 32. The ALJ identified the following severe impairments: diabetes mellitus; peripheral neuropathy; knee disorder, status post surgery; spine disorder, status post placement of electronic stimulation pain control leads; electronic stimulator device in the right buttock with lead extending into the thoracic lumbar spinal canal; chronic pain syndrome; right rotator cuff tear; plantar fasciitis; pes planus; hammertoes; metatarsalgia; forefoot capsulitis; and obesity. AR 32-33. The ALJ also identified the non-severe impairments of hyperopia and depression. AR 33. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 33-34.

Based on a review of the entire record, the ALJ found that Plaintiff retained the RFC to perform light work with the limitations that Plaintiff was limited to: occasionally lifting 20 pounds; frequently lifting 10 pounds; occasionally carrying 20 pounds; frequently carrying 10 pounds; could sit for six hours; could stand for six hours; could walk for six hours; could push/pull as much as he could lift/carry; occasionally operating foot controls with the right foot; occasionally operating foot controls with the left foot; occasionally reaching overhead to the right; occasionally balancing, stooping, kneeling, crouching, and crawling; could never work at unprotected heights; could never work with moving mechanical parts; could never work in extreme cold; could never work in extreme heat; and occasionally working in vibration. AR 34. The ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "medical opinion(s) and prior administrative medical finding(s)." AR 34; 34-41.

Given this RFC, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 41. However, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. 41-42. The ALJ noted that examples of jobs consistent with Plaintiff's age, education, work experience, and RFC included: (1) Marker (DOT No. 209.587-034;

light; SVP 2; with 129,300 jobs in the national economy); and (2) Housekeeping Cleaner (DOT No. 323.687-014; light; SVP 2; with 220,000 jobs in the national economy).  AR 42.  The ALJ therefore concluded that Plaintiff had not been disabled from May 23, 2017, through the date of the decision. *Id.*

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

7

burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[4]

Plaintiff contends that the ALJ erred by discounting the May 14, 2008 and July 2, 2008 opinions of Dr. Paul Grahek, M.D., and Lissette G. Sanguino, M.A. (Doc. 20 at 17-24; Doc. 25 at 1-4.)

**A. Medical Opinion Evidence**

Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions. 20 C.F.R. § 404.1520c. Under the new regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors. 20 C.F.R. § 404.1520c(b)(2).

Ninth Circuit case law preceding the new regulations afforded deference to the medical opinions of treating and examining physicians. Indeed, prior to the current regulations, the Ninth Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for rejecting the medical opinions of treating or examining physicians. These standards of articulation no longer apply in light of the new regulations, and the ALJ was not required to provide "specific and legitimate reasons" to discount the medical opinions. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (finding revised social security regulations "clearly irreconcilable with our caselaw according special

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

deference to the opinions of treating and examining physicians on account of their relationship with the claimant"). However, the Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id.* (internal citations omitted); *see* 20 C.F.R. § 404.1520c(c). In this context,

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence. Id. § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim. Id. § 404.1520c(c)(2).

*Id*. at 791-92.

1. <u>Opinions of Dr. Grahek and M.A. Sanguino</u>

Plaintiff contends that the ALJ erred by discounting the May 14, 2008 and July 2, 2008 opinions of Dr. Paul Grahek, M.D., and Lissette G. Sanguino, M.A. (Doc. 20 at 17-24; Doc. 25 at 1-4.)

First, on May 14, 2008, Dr. Grahek and M.A. Sanguino appraised Plaintiff as having Reflex Sympathetic Dystrophy, Lower Limb; Traumatic Injury of Knee; and Derangement of Medial Meniscus and wrote that Plaintiff should return for care "in about 6 weeks (around 6/25/2008)." AR 575-76. They wrote under Treatment and Discussion that Plaintiff should continue Home Exercise Program and CryoTherapy; continue with knee unloading brace; refill Viocdin and Ibuprofen "on a prn basis." *Id.* They further wrote, "Return to work on modified duty with restrictions no climbing ladders, stools, scaffolds, etc.; climbing stairs occasionally is OK; no squatting; no repeated kneeling or bending knee that causes pain; no professional driving; standing/walking maximum of 30 minutes per hour, 8 hours per day; must be permitted to wear knee brace as needed." AR 576-77.

Second, on July 2, 2008, Dr. Grahek and M.A. Sanguino listed Plaintiff's diagnoses as Reflex Sympathetic Dystrophy, Lower Limb; Traumatic Injury of Knee; History of Arthroscopy, Knee; and Derangement of Medial Meniscus; and wrote that Plaintiff should return for care "in about 2 months (around 9/3/2008)." AR 596-97. They wrote that Plaintiff's treatment included Plaintiff obtaining

refills of Ibuprofen and Vicodin on a "prn basis." *Id.* They further wrote, "Return to work on modified duty with restrictions: no climbing ladders, stools, scaffolds, etc.; climbing stairs occasionally is OK; no squatting; no repeated kneeling or bending knee that causes pain; no professional driving; standing/walking maximum of 30 minutes per hour, 8 hours per day; must be permitted to wear knee brace as needed. To follow up with this physician nine weeks since he should have been seen by Pain Management Specialist… in intermim [sic]." *Id.*

In evaluating these opinions, the ALJ summarized reasoned as follows:

> the undersigned considered the return to work restrictions in the record but does not find them persuasive (See, e.g., Exhibit 3F, page 69). May 14, 2008 records from Steven Paul Grahek, M.D., and Lissette G Sanguino, M.A., as well as a July 2, 2008 record contained a return to work on modified duty with restrictions of no climbing ladders, stools, scaffolds, etc.; occasionally climbing stairs; no squatting; no repeated kneeling or bending knee that causes pain; no professional driving; standing/walking maximum of 30 minutes per hour, 8 hours per day; and must be permitted to wear a knee brace as needed (Exhibit 3F, pages 69-70, 89-90). However, it is not clear if these are temporary work restrictions. A May 14, 2008 record noted traumatic injury of knee, history of arthroscopy of knee, and derangement medial meniscus (Exhibit 3F, page 69). However, a July 18, 2019 record indicated that on exam, the claimant had normal strength, was cooperative, did not appear ill, was in no distress, was alert and oriented to person, place, and time, and had no sensory deficit (Exhibit 30F, page 27). In addition, a January 4, 2020 record indicated that on exam, the claimant was alert, was in no acute distress, had regular cardiovascular rate and rhythm, had clear lungs to auscultation, had no gastrointestinal tenderness, was cooperative, had normal judgment, had normal psychiatric thoughts, had normal speech, had equal and normal motor strength bilaterally (although exam of the right upper extremity was limited by shoulder pain), and had equal and normal sensation bilaterally (Exhibit 14F, page 42). Also, a January 7, 2020 record indicated that the claimant's gait was normal, the claimant was able to walk on heels and toes, the claimant had normal cervical spine range of motion, the claimant was in no acute distress, the claimant had a negative Slump test on the left and on the right, the claimant had a negative Patrick test on the left and on the right, the claimant had a negative sitting straight leg raise test on the left and on the right, and the claimant had a negative supine straight leg raise test at 90 degrees on the left and on the right (Exhibit 34F, pages 154-156). In addition, a February 18, 2020 record indicated that on exam, the claimant was in no distress, had normal cardiovascular rate, had normal breath sounds, had normal neck range of motion, had a normal monofilament exam, had a normal mood and affect, and had a normal sensory exam on diabetes mellitus foot

exam (Exhibit 13F, page 50). This evidence is consistent with a finding that the claimant retained the functional abilities in the above residual functional capacity.

AR 39-40.

2. No De Facto Reopening of Prior Determination & Relevant Disability Period

As a threshold issue regarding the relevant period for disability, Defendant contends that the ALJ did not have discretion to reopen the ALJ's final decision, and therefore did not err in addressing Dr. Grahek's and M.A. Sanguino's 2008 opinions. (Doc. 24 at 6-7.)

"A determination, revised determination, decision, or revised decision may be reopened—(a) Within 12 months of the date of the notice of the initial determination, for any reason; (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case; or (c) At any time if—[certain conditions are met]." 20 C.F.R. § 404.988(a)-(c). The conditions of subsection (c) are:

> (1) It was obtained by fraud or similar fault (see § 416.1488(c) of this chapter for factors which we take into account in determining fraud or similar fault);
> (2) Another person files a claim on the same earnings record and allowance of the claim adversely affects your claim;
> (3) A person previously determined to be dead, and on whose earnings record your entitlement is based, is later found to be alive;
> (4) Your claim was denied because you did not prove that a person died, and the death is later established—
>     (i) By a presumption of death under § 404.721(b); or
>     (ii) By location or identification of his or her body;
> (5) The Railroad Retirement Board has awarded duplicate benefits on the same earnings record;
> (6) It either—
>     (i) Denies the person on whose earnings record your claim is based gratuitous wage credits for military or naval service because another Federal agency (other than the Veterans Administration) has erroneously certified that it has awarded benefits based on the service; or
>     (ii) Credits the earnings record of the person on which your claim is based with gratuitous wage credits and another Federal agency (other than the Veterans Administration) certifies that it has awarded a benefit based on the period of service for which the wage credits were granted;
> (7) It finds that the claimant did not have insured status, but earnings were later credited to his or her earnings record to correct errors apparent on the face of the earnings record (section 205(c)(5)(C) of the

11

>Act), to enter items transferred by the Railroad Retirement Board, which were credited under the Railroad Retirement Act when they should have been credited to the claimant's Social Security earnings record (section 205(c)(5)(D) of the Act), or to correct errors made in the allocation of wages or self-employment income to individuals or periods (section 205(c)(5)(G) of the Act), which would have given him or her insured status at the time of the determination or decision if the earnings had been credited to his or her earnings record at that time, and the evidence of these earnings was in our possession or the possession of the Railroad Retirement Board at the time of the determination or decision;
>(8) It is fully or partially unfavorable to a party, but only to correct clerical error or an error that appears on the face of the evidence that was considered when the determination or decision was made;
>(9) It finds that you are entitled to monthly benefits or to a lump sum death payment based on the earnings of a deceased person, and it is later established that:
>>(i) You were convicted of a felony or an act in the nature of a felony for intentionally causing that person's death; or
>>(ii) If you were subject to the juvenile justice system, you were found by a court of competent jurisdiction to have intentionally caused that person's death by committing an act which, if committed by an adult, would have been considered a felony or an act in the nature of a felony;
>(10) It either—
>>(i) Denies the person on whose earnings record your claim is based deemed wages for internment during World War II because of an erroneous finding that a benefit based upon the internment has been determined by an agency of the United States to be payable under another Federal law or under a system established by that agency; or
>>(ii) Awards the person on whose earnings record your claim is based deemed wages for internment during World War II and a benefit based upon the internment is determined by an agency of the United States to be payable under another Federal law or under a system established by that agency; or
>(11) It is incorrect because—
>>(i) You were convicted of a crime that affected your right to receive benefits or your entitlement to a period of disability; or
>>(ii) Your conviction of a crime that affected your right to receive benefits or your entitlement to a period of disability is overturned.

20 C.F.R. § 404.988(c). In addition to these conditions under which a case may be reopened, the Ninth Circuit has held that when an ALJ was aware of a prior denial but considered evidence of a disability prior to that denial, under "these circumstances it is appropriate for the Court to treat the ALJ's actions as a de facto reopening, and assume a disability onset date [prior to the previous

1   denial].” *Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001) (The ALJ knew of the June 1991 denial of
2   Lewis's 1991 application. Yet he considered evidence of disability from as early as 1989, and he
3   accepted without comment the alleged onset date of September 15, 1990); *Williams v. Berryhill*, No.
4   1:17-cv-0993-SKO, 2018 WL 4350088, at *3 (E.D. Cal. Sept. 11, 2018) ("Notwithstanding the
5   Commissioner's regulations, if an ALJ is aware of the denial of a claimant's prior application for DIB
6   or SSI benefits, but accepts an alleged onset date during a previously-adjudicated period, and
7   considers evidence of disability from the already-adjudicated period, then 'it is appropriate for the
8   Court to treat the ALJ's actions as a de facto reopening.'") (quoting *Lewis*, 236 F.3d at 510).

9         Here, Plaintiff's 2007 application was denied and became final upon consideration on February
10  27, 2008, as Plaintiff did not proceed further with that application. AR 76-77, 87. Plaintiff's 2010
11  application was denied and became final upon reconsideration on October 6, 2010, as Plaintiff did not
12  proceed further with his second application. AR 81-82, 87. Plaintiff initiated the present matter with
13  his December 24, 2019 application for Title SVI Supplemental Security Income. AR 363-72.
14  Plaintiff's 2019 application was filed over nine years after the final decision in his 2010 application, so
15  the provisions of 20 C.F.R. § 404.988(a) and (b) do not apply. Nor does Plaintiff's case fit any of the
16  scenarios contemplated by 20 C.F.R. § 404.988(c).

17        A review of the ALJ's decision does not demonstrate that the ALJ was aware of the prior
18  determination or de facto reopened it. *See* AR 24-50. The ALJ's discussion of jurisdiction and
19  procedural history only discusses Plaintiff's January 7, 2020 application. AR 30. While the ALJ
20  discusses that Plaintiff "meets the insured status requirement… through December 31, 2011" and "has
21  not engaged in substantial gainful activity since February 1, 2007," the ALJ does not discuss
22  Plaintiff's prior applications. AR 32. Though the ALJ examines medical records from October 2007
23  forward and discusses state consultant's opinions from February 2008 and September 2010, the ALJ
24  does not indicate an awareness of the prior determinations. AR 35-41. Indeed, the ALJ did not accept
25  an alleged onset date during the previously-adjudicated period. In fact, the ALJ only considered such
26  evidence in order to determine Plaintiff's disability during the relevant time period alleged in the
27  current application. Plaintiff's case therefore does not meet the standard set forth by the Ninth Circuit,
28  as the ALJ was not aware of the prior denials. *Lewis*, 236 F.3d at 510; *see*, *e.g.*, *Reyes v. Comm'r of*

*Soc. Sec.*, No. C 10-04571 JSW, 2012 WL 1094337, at *5 (N.D. Cal. Mar. 29, 2012) (holding that ALJ did not de facto reopen the prior application, where the ALJ merely considered evidence from the time period covered by the claimant's first application.)  The ALJ therefore did not de facto reopen the earlier case.

The Court must assess the relevant period for the present application.  In cases involving a prior final agency decision of non-disability where the claimant subsequently files a new application for benefits, the prior administrative decision triggers a presumption of continuing non-disability. *Chavez v. Bowen*, 844 F.2d 691, 693–64 (9th Cir. 1988) (where ALJ made "no reference" to prior ALJ's decision and "failed to consider the first judge's findings," the principles "of res judicata made binding the first judge's determinations").  To overcome this presumption of continuing non-disability, the claimant "must prove 'changed circumstances' indicating a greater disability." *Id*. (where the Secretary failed to identify "new" information that "had not been presented to the first" ALJ, it was error for the second ALJ to "reopen the prior determinations concerning the claimant's ability to perform his past relevant work"); *cf. Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (applying *Chavez* and noting that the "entirety of the medical evaluations presented with respect to the present application were conducted after [plaintiff's] initial disability determination. These evaluations necessarily presented new and material information not presented to the first ALJ.").

Because the ALJ did not reopen the earlier cases, there is a presumption of continuing non-disability, and Plaintiff was required to prove that he was disabled during the relevant period. *Chavez*, 844 F.2d at 693–64.  Given the October 6, 2010 final decision, the relevant period for the current matter began October 7, 2010.  AR 81-82, 87.[5]

Courts in the Eastern District have declined to reverse an ALJ's decision on the basis that medical opinions predating the date of disability onset were not expressly considered.  *See Thomas v.*

---

[5] Plaintiff would be required to prove disability between the October 7, 2010 date and the expiration of his disability insurance on December 31, 2011.  *See* 20 C.F.R. § 404.131 ("To establish a period of disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled"); AR 32 ("The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.").

*Berryhill*, No. 1:16-cv-01337-JLT, 2018 WL 534012, at *5–6 (E.D. Cal. Jan. 24, 2018) (SSI case finding ALJ did not err in failing to address treating physician's opinion related to a prior application for benefits, which predated date of onset for instant matter); *Dotson v. Astrue*, No. 1:10-cv-00243 SKO, 2011 WL 1883468, at *6–8 (E.D. Cal. May 16, 2011) (same, concluding opinion that predated the onset date by almost a year was "stale and not time-relevant to Plaintiff's current claim of disability."); *Ovando v. Comm'r of Soc. Sec.*, No. 1:21-CV-00030-SAB, 2022 WL 2974654, at *3 n.6 (E.D. Cal. July 27, 2022) ("other courts in this District have declined to reverse an ALJ's decision on the basis that medical opinions predating the date of disability onset were not expressly considered and this Court finds those cases persuasive."); *see also Fair v. Bowen*, 885 F.2d 597, 600, 606 (9th Cir. 1989) (superseded by statute on other grounds) (ALJ did not err by only mentioning and according little or no weight to consult opinion conducted for prior application for disability insurance benefits that was denied but not contested by the plaintiff, and which predated the period at issue and was thus only relevant to "[plaintiff's] burden of proving that his condition [had] worsened since [the prior application's date of decision].").

In *Thomas*, the court examined an opinion that was "related to the period previously adjudicated by the Social Security Administration, which determined Plaintiff's 'condition [was] not severe enough to keep [her] from working.'" *Thomas*, 2018 WL 534012, at *6. The court found that because "Plaintiff did not appeal this decision, the administration's decision that she was not disabled when [physician] examined her was final." *Id*. The court held that "the ALJ did not err in failing to address the medical record related to Plaintiff's prior application, including the decision of [physician]." *Id*.

Similarly, the May 14, 2008 and July 2, 2008 opinions at issue relate to the period previously adjudicated by the Social Security Administration, in which the Commissioner's found Plaintiff was not disabled through October 6, 2010. AR 87; 575-76; 596-97. The ALJ's discussion of the 2008 opinions of Dr. Grahek and M.A. Sanguino in relation to Plaintiff's current application therefore fails to be harmful error for reasons discussed below.

///

///

### 3. ALJ Error in Evaluation of Dr. Grahek's and M.A. Sanguino's Opinions

The Court finds that the ALJ did not properly evaluate these opinions under the new regulations. While the ALJ's reasoning regarding the overall evidence appears to invoke the consistency factor, the consistency factor requires the ALJ discuss the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). While the ALJ listed findings from 2019 and 2020 that deal with Plaintiff's cardiovascular, spinal, neck, lung, and psychological capacities, no findings address the primary concern of Dr. Grahek and M.A. Sanguino's opinion – that Plaintiff's knee was impaired and prevented him from squatting, repeated kneeling, knee bending, and professional driving. AR 576-77; 596-97; 1119 (July 18, 2019 report noting in musculoskeletal that Plaintiff reported positive for back pain but negative for falls, joint pain, myalgias and neck pain; musculoskeletal findings showed tenderness, pain, and spasm but normal range of motion; neurological findings showed normal strength, no sensory deficit, and alertness to person, place, and time); 862 (January 4, 2020 report showing "RUE is limited by shoulder pain" but normal findings for cardiovascular, respiratory, psychiatric, motor strength, sensation, and speech). Furthermore, the gait and walking findings cited appear to be more related to Plaintiff's diabetes, spine disorder, or neuropathy than to Dr. Grahek's and M.A. Sanguino's knee-related limitation to standing or walking for more than 30 minutes per hour, 8 hours per day. AR 1607-1609 (January 7, 2020 report noting that Plaintiff reported some neuropathy symptoms but did not experience foot and/or ankle pain. Further noting in physical exam that Plaintiff was in no acute distress; gait was normal; Plaintiff could walk on heels and toes; cervical spine range of motion was normal; negative Patrick Test and Slump Test on both left and right; and negative straight leg raising in supine test for both left and right at 90 degrees); 814 (February 18, 2020 report noting no numbness, tingling or pain in extremities related to diabetes; no coughing or shortness of breath; no chest pain, palpitations and leg swelling; normal findings and range of motion for neck; generally normal foot exam findings; and normal constitutional findings with no distress). In short, the alleged inconsistency between Dr. Grahek's and M.A. Sanguino's opined limitations and the record is not supported by the evidence cited. Therefore, the ALJ did not appropriately consider the consistency factor.

The ALJ also did not include sufficient analysis of the supportability factor. "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)). In the only supportability-related analysis, the ALJ noted that a May 14, 2008 record noted traumatic injury of knee, history of arthroscopy of knee, and derangement medial meniscus. AR 39; 576 (noting traumatic injury of knee, "hx of arthroscopy, knee," and derangement of medial meniscus). To the extent that the ALJ considered the supportability factor, it appears to favor the persuasiveness of the opinion. But this does not explain why the restrictions and limitations opined were not considered persuasive. Accordingly, the Court finds that the ALJ erred in assessing the opinions of Dr. Grahek and M.A. Sanguino.

4. Harmless Error

Nevertheless, the Ninth Circuit has found the harmless error standard applies in instances of ALJ's discounting of physician opinions. *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (holding that the "harmless error analysis applies ... to assess the impact of the ALJ's failure to even mention [a treating physician] or [his] notes, let alone its failure to give specific and legitimate reasons that are supported by substantial evidence for rejecting a treating source's medical opinion"); *Hernandez v. Berryhill*, 707 F. App'x 456, 458 (9th Cir. 2017) (holding that the ALJ committed harmless error in misidentifying physician's notes); *Roy v. Colvin*, 656 F. App'x 816, 818–19 (9th Cir. 2016) (holding the ALJ committed harmless error where she did not consider a reviewing physician's opinion because she believed the physician was "referring to 'another individual of the same name.'") The Ninth Circuit has also "affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006).

As discussed above, courts in the Eastern District have found that an ALJ was not required to assess a medical opinion that predated the disability onset date and have declined to reverse based on that error. *See Thomas*, 2018 WL 534012, at *5–6; *Dotson*, 2011 WL 1883468, at *6–8; *Ovando*, 2022 WL 2974654, at *3 n.6.; *Fair*, 885 F.2d at 600, 606.

Because the May 14, 2008 and July 2, 2008 opinions at issue relate to the period previously adjudicated by the Social Security Administration, the ALJ was not required to address them, and the ALJ's failure in assessing them was therefore irrelevant to the ALJ's ultimate disability conclusion. *Id.* Accordingly, the ALJ's error in assessing these opinions was harmless. *Stout*, 454 F.3d at 1055.

Plaintiff argues that discrediting the opinion based on a rationale that the ALJ did not raise amounts to post hoc rationalization because the ALJ did not base the discrediting upon the grounds that the medical opinions predated the relevant disability period. (Doc. 25 at 1-3.) However, the Court is not attributing the discrediting of the medical opinions to the ALJ but instead finds that the ALJ erred and that error was harmless. Plaintiff's argument that this is post hoc rationalization is therefore unavailing.

Plaintiff further argues that medical opinions that predate an alleged onset date remain of probative value and consideration of a medical opinion that predates the alleged onset date does not necessarily equate to an improper request to reopen a prior application. (Doc. 25 at 3-4.) In support, Plaintiff cites the Ninth Circuit as holding broadly that the "ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, the Ninth Circuit stated this along with the then-standard for rejecting physician opinions as part of the broader legal standard and did not examine whether ALJs must examine medical opinions that predate the relevant period. *Id.* Plaintiff further cites an unpublished Ninth Circuit opinion finding that the ALJ had erred by failing to comment upon medical reports predating the alleged disability onset date. *Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012). However, the Ninth Circuit in *Williams* ultimately held that the error was harmless because the ALJ based the disability determination on other medical opinions and the RFC was consistent with those opinions and other substantial evidence in the record. *Id.* at 869. Plaintiff also cites out-of-district cases, but the Court does not find these cases persuasive in light of Eastern District cases holding the ALJ did not err by not considering medical opinions that predated the alleged onset date. *See Henderson v. Comm'r, Soc. Sec. Admin.*, No. 6:17-CV-00481-HZ, 2018 WL 2102401, at *9 (D. Or. May 4, 2018) ("Thus, while the date of the opinion may be one factor the ALJ can consider in giving an opinion more or less weight, a medical opinion is not insignificant or not probative merely because it is rendered prior to an alleged onset date, particularly in cases where

18

the claimant suffers from an ongoing impairment."); *Velvet L. J. K. v. Kijakazi*, No. 5:23-CV-00054-MAR, 2023 WL 5019506, at *8 (C.D. Cal. Aug. 4, 2023) ("As noted above, even after the regulatory changes, an ALJ may not completely ignore a medical opinion, even if it predates the alleged onset date."); *Thomas*, 2018 WL 534012, at *5–6; *Dotson*, 2011 WL 1883468, at *6–8; *Ovando*, 2022 WL 2974654, at *3 n.6.  The ALJ's failure to properly assess the opinions therefore remains harmless error.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for summary judgment (Doc. 20) is DENIED; and
2. The Clerk of this Court is directed to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff Jose Carmen Vargas.

IT IS SO ORDERED.

Dated: **March 29, 2024**                    /s/ Barbara A. McAuliffe
                                              UNITED STATES MAGISTRATE JUDGE